### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL CHARLES NATOLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-01242-AGF |
| | ) | |
| DEAN KELLY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Michael Charles Natoli for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $36.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss the individual and official capacity claims against defendant John Lynch. However, the Court will direct the Clerk of Court to issue process on defendant Dean Kelly in her individual capacity as to plaintiff's claim of deliberate indifference to medical needs.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff submitted a copy of his inmate account statement from his time in the Phelps County Jail. (Docket No. 3). The account statement shows an average monthly deposit of $180.00. The Court will therefore assess an initial partial filing fee of $36.00, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Butner Low Federal Correctional Institution in Butner, North Carolina. At the time relevant to this complaint, however, he was being held at the Phelps County Jail in Rolla, Missouri, first as a pretrial detainee, and later as a convicted prisoner. He brings this action pursuant to 42 U.S.C. § 1983. His complaint names Nurse Dean Kelly and Attorney John Lynch as defendants. (Docket No. 1 at 2-3). Attorney Lynch is sued in both his individual and official capacities, while Nurse Kelly is sued in an individual capacity only.

In the "Statement of Claim," plaintiff asserts that he saw his urologist, Dr. Kazmerick, on November 5, 2018. (Docket No. 1 at 4). At that time, the doctor "performed a prostate-specific

antigen (PSA) blood test along with a 12 core biopsy and a digital rectal exam." The following day, plaintiff was arrested and held at the Phelps County Jail on federal charges.

On December 18, 2018, plaintiff received the results of his prostate biopsy, which showed that he "had prostate cancer and needed to see Dr. Kazmerick for [a] cancer treatment plan." He was transported to Dr. Kazmerick on February 14, 2019. According to plaintiff, Dr. Kazmerick stated that he needed to see Dr. Siddiquri at St. Louis University Hospital for surgery to remove his prostate. An appointment was scheduled for March 25, 2019.

Plaintiff alleges that Nurse Kelly was advised that she needed to set this appointment with Dr. Siddiquri, but she did not make it until eleven months had passed, even though plaintiff made repeated requests. He further states that Attorney Lynch had been "informed at this time," had received his medical records, and had told him that he would receive treatment. Plaintiff states "this never happened."

On May 3, 2019, plaintiff pleaded guilty in his federal criminal case, in which Attorney Lynch was serving as his defense counsel.[1] Plaintiff states that Attorney Lynch told him that Lynch would file a "Medical Release Motion" right after his plea, but this did not happen. He also asserts that he continued to ask Attorney Lynch for medical treatment, and that Lynch told him that the federal prison in Springfield, Missouri "would handle the process." Plaintiff states this never happened. (Docket No. 1 at 4-5).

On December 11, 2019, plaintiff wrote to his urologist, Dr. Kazmerick, and informed him that he had still not seen Dr. Siddiquri. (Docket No. 1 at 5). Plaintiff states that Dr. Kazmerick sent a letter to him, Attorney Lynch, and Nurse Kelly advising that "it was urgent for [him] to see the

---

[1] The case is *United States v. Miller, et al.*, No. 4:17-cr-593-AGF-2 (E.D. Mo.). On May 3, 2019, plaintiff pleaded guilty to two counts of distributing a mixture or substance containing a detectable amount of heroin. He was sentenced to a term of 96 months' imprisonment on March 9, 2020.

4

surgeon." According to plaintiff, Dr. Kazmerick also called the Phelps County Jail, but his calls were not answered for two weeks.

That same day, plaintiff wrote to the Court in his criminal case alleging that he had been denied medical care for the last twelve months. The letter was referred to Attorney Lynch, who "acted as if he didn't know of [his] cancer and would visit [him] to rectify [his] concerns."[2] Plaintiff met with Attorney Lynch on January 6, 2020, and Lynch advised "he would look into the matter."

On January 25, 2020, plaintiff was transported to St. Louis University Hospital to meet with Dr. Siddiquri. Dr. Siddiquri advised that plaintiff needed to undergo a robotic prostatectomy. Dr. Siddiquri also did another PSA blood test, which showed that plaintiff's prostate-specific antigens had doubled. Plaintiff attributes this to the twelve-month delay in treatment. (Docket No. 1 at 5-6). Plaintiff further states that he was experiencing pain and swelling in his testicle. (Docket No. 1 at 6).

Dr. Siddiquri advised plaintiff that the jail needed to make an appointment for his surgery. Despite seeing Nurse Kelly "several times" over the course of six months, and complaining of pain, a surgery appointment had not been made at the time plaintiff filed his complaint. Aside from not receiving cancer treatment, plaintiff accuses Nurse Kelly of denying him medical burn cream, even though he has third-degree burns over forty-five percent of his body.

Following plaintiff's sentencing, on March 9, 2020, plaintiff states that Attorney Lynch failed to file a medical furlough notice for his surgery.

In a supplement to his complaint, plaintiff states that he wrote Attorney Lynch on April 20, 2020, telling Lynch that plaintiff had not heard back from him or Nurse Kelly about a date for

---

[2] According to a docket entry in plaintiff's criminal case, the Court referred plaintiff's letter to Attorney Lynch, and Lynch advised the Court that he had reached out to the jail to rectify plaintiff's concerns. *United States v. Miller, et al.*, No. 4:17-cr-593-AGF-2 (E.D. Mo. Dec. 23, 2019).

surgery. (Docket No. 7). Attorney Lynch responded with a letter on May 18, 2020, advising plaintiff that Dr. Siddiquri would do the surgery in June 2020. According to plaintiff, this did not happen.

On June 1, 2020, plaintiff alleges that he saw Nurse Kelly at the Phelps County Jail, and advised her that he had a lot of pain in his lower left side. Plaintiff contends that Nurse Kelly did not do anything for his pain or inform Dr. Siddiquri about plaintiff's next appointment.

On July 15, 2020, plaintiff states that Nurse Kelly took his information and told him that it would be forwarded to the United States Marshals Service and Dr. Siddiquri's office. On July 23, 2020, plaintiff left the Phelps County Jail and was transferred to a detention center in Michigan, where he has still not received any treatment for his prostate cancer. In August of 2020, plaintiff states that Attorney Lynch sent him a "Request for Medical Records," which plaintiff claims is the fourth one he has signed.

Plaintiff alleges that he spent approximately 20 months in the Phelps County Jail, during which time he was in pain and unable to receive surgery. (Docket No. 1 at 6). He is also concerned that his cancer may have spread. (Docket No. 1 at 7). As a result, he seeks $1,250,000 in damages. (Docket No. 1 at 8).

### Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, alleging that Attorney Lynch and Nurse Kelly were deliberately indifferent to his medical needs. For the reasons discussed below, both the individual and official capacity claims against Attorney Lynch must be dismissed. However, the Court will direct the Clerk of Court to issue process on Nurse Kelly in her individual capacity as to plaintiff's claim of deliberate indifference to his medical needs.

**A.  Individual Capacity Claim Against Attorney Lynch**

Plaintiff alleges that Attorney Lynch, a private attorney appointed by the Court to serve as defense counsel in plaintiff's criminal case, failed to ensure that he received adequate medical care.[3] He has not demonstrated, however, that Attorney Lynch was a state actor.

"The essential elements of a [42 U.S.C.] § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020). However, a defense attorney, whether appointed or retained, does not act under color of state law, and thus cannot be liable for the alleged deprivation of constitutional rights under 42 U.S.C. § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990) (stating that the Eighth Circuit "has repeatedly held that both retained and appointed attorneys are not liable for deprivations of constitutional rights under 42 U.S.C. § 1983 for the reason that they do not act under color of state law"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel"). This rule is applicable in cases where the attorney is appointed by a federal court. *See Christian*, 907 F.2d at 810 (stating that "attorneys are not transformed into federal officials for purposes of a *Bivens* action merely because they are appointed by a federal court pursuant to federal law").

---

[3] Attorney Lynch was appointed pursuant to 18 U.S.C. § 3006(A) on November 7, 2018. *United States v. Natoli*, No. 4:17-cr-593-AGF-NAB (E.D. Mo.).

Here, Attorney Lynch is a private attorney who was appointed to represent plaintiff in his criminal case. Plaintiff alleges that Attorney Lynch failed to file certain motions regarding his healthcare, and also failed to ensure that he received proper medical care. However, the actions that Attorney Lynch took or failed to take occurred while Lynch was performing the traditional functions of a defense counsel. As noted above, when acting in that role, an attorney is not acting under color of state law for purposes of § 1983. That is, Attorney Lynch was not transformed into a federal official simply because the Court appointed him to act as plaintiff's defense counsel. Allegations that a defendant acted under color of law is an essential element to a § 1983 claim. Because plaintiff has not satisfied that element, he has failed to state a claim.

Furthermore, there is no indication in plaintiff's complaint that Attorney Lynch ever went outside the scope of his role as defense counsel in such a way as to act under color of law. That is, plaintiff does not present any allegations suggesting that Attorney Lynch somehow conspired with Nurse Kelly or any other state actor to deprive plaintiff of proper medical care. *See Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985) ("Allegations that a public defender has conspired with judges to deprive an inmate of federally protected rights may state a claim under § 1983"); *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (explaining that district court's holding that public defenders never act under color of state law is erroneous, because if "a conspiracy is adequately pleaded, the court appointed attorneys may be regarded as acting under color of law"); and *Hamilton v. Wold Johnson Law Firm*, 34 Fed. Appx. 508, 509 (8th Cir. 2002) (explaining that plaintiff could not file a 42 U.S.C. § 1983 claim against an appointed attorney unless that attorney had conspired with state actors).

For the reasons discussed above, plaintiff has not established that Attorney Lynch acted under color of law. As such, the individual capacity claim against Attorney Lynch must be dismissed.

## B.  Official Capacity Claim Against Attorney Lynch

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

As with his individual capacity claim, plaintiff's official capacity claim fails because Attorney Lynch is not employed by a governmental entity. Rather, as plaintiff notes, Attorney Lynch is self-employed and works at his own law firm. There is no indication that this law firm amounts to a public employer or is in any way connected with a governmental agency. Certainly, he has not established that a governmental entity is liable for the alleged violation of his constitutional rights. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (stating that liability against a local governing body may attach if the constitutional violation "resulted from (1) an

official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise"). For this reason, plaintiff's official capacity claim against Attorney Lynch must be dismissed.

### C. Individual Capacity Claim Against Nurse Kelly[4]

Plaintiff accuses Nurse Kelly of being deliberately indifferent to his medical needs. During much of the time relevant to this complaint, plaintiff was a pretrial detainee, though he was later convicted following a guilty plea. As a pretrial detainee, his claims arise under the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). *See also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment). Thus, regardless of whether plaintiff was a pretrial detainee or a convicted prisoner, his claims are governed by the Eighth Amendment.

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

---

[4] Plaintiff has not sued Nurse Kelly in her official capacity.

10

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

In this case, plaintiff's allegations against Nurse Kelly are sufficient for purposes of initial review. He has provided facts demonstrating that he has a serious medical need, including a diagnosis of prostate cancer and burns over forty-five percent of his body. He has further alleged that Nurse Kelly delayed – and ultimately failed – to schedule a surgery deemed necessary by two doctors. He also states that she refused to provide him with the burn cream necessary to treat his burns. Plaintiff states that Nurse Kelly was aware of his needs because he told her on several occasions. The Court must accept these allegations as true. *See Jones v. Douglas Cty. Sheriff's*

*Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the plaintiff). As such, the Court will direct the Clerk of Court to issue process on Nurse Kelly in her individual capacity as to plaintiff's claim of deliberate indifference to his medical needs.

### D.  Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

### E. Motion to Supplement Complaint

Plaintiff has filed a document that has been construed as a motion to supplement his complaint. (Docket No. 7). The supplement consists of a single page titled "Case Summary," in the same manner that plaintiff presented his allegations in his complaint. The "Case Summary" contains numbered paragraphs, continuous with the numbered paragraphs in the complaint, with each paragraph consisting of a factual allegation. The Court will grant plaintiff's motion to supplement, and treat the additional allegations as part of the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for Leave to Proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $36.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement his complaint (Docket No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that the individual and official capacity claims against defendant John Lynch are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

13

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to issue process or cause process to issue on defendant Dean Kelly in her individual capacity as to plaintiff's claim of deliberate indifference to medical needs.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 14th day of December 2020.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

14